IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NOVA BENEFIT PLANS, LLC, | ) | CASE NO. 8:10-CV-335 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF INTERNAL REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |

## PETITION TO QUASH SUMMONS

Pursuant to 26 U.S.C. § 7609(b), Nova Benefit Plans, LLC ("Nova"), by and through the undersigned counsel, hereby petitions the Court to quash the administrative summons (the "Summons") issued by the Commissioner of Internal Revenue (the "Commissioner" or "Government") to Washington National Insurance Company ("Washington National").

The Summons was issued for the improper purpose of identifying participants in programs offered by Nova, including the Sickness Accident Disability Indemnity Plan & Trust ("SADI Trust"), rather than focusing on documents relevant to any determination of income tax liability of Joseph Reddy, M.D., Inc. Moreover, the Summons seeks documents that are already in the possession of the Commissioner and subject to a Fed. R. Crim. P. 41(g) claim, captioned *Pettibone Tavern LLC v. Commissioner of Internal Revenue*, United States District for the District of Connecticut, Case No. 3:10-mc-00064-AVC (the "41(g) Action"), seeking the return of illegally-seized documents belonging to individuals and entities that are *not* the subject of a criminal investigation. Thus, the Commissioner cannot meet its initial burden to sustain the Summons and it should be quashed.

In the alternative, Nova seeks to stay compliance with the Summons pending the resolution of the pending criminal investigation.

## I. BACKGROUND FACTS

On August 18, 2010, IRS Agent Sophia Wong issued the third-party administrative Summons in the matter of the income tax liability of Joseph Reddy, M.D., Inc. (the "Taxpayer"), seeking broad categories of documents from Washington National. (*See* Summons attached as Exhibit A to the Declaration of Wayne Bursey ["Bursey Decl."].) The IRS sent Nova notice of the Summons, dated August 19, 2010, and which Nova received on August 23, 2010.

The Summons seeks broad categories of documents, many of which do not concern the potential tax liability of the Taxpayer. Of the 12 requests, seven of them do not even mention the Taxpayer. The rest are completely irrelevant to any legitimate investigation of the taxpayer that may be pending or are so overbroad that: (a) it is impossible to ascertain what the commissioner is looking for, or (b) it would require the disclosure of every participant in several Nova-sponsored employee benefits plans. This is beyond the legitimate scope for IRS administrative summonses.

On April 13, 2010, the Eastern District of Wisconsin issued a federal grand jury subpoena to Nova, seeking a broad array of documents. Then, on April 20, 2010, over 70 heavily-armed agents with the seal of Internal Revenue Service Criminal Investigation Division emblazoned on their black Kevlar bullet-proof vests executed a commando raid (the "IRS Raid") on the premises that Nova shares with two dozen other entities. The IRS Raid was conducted pursuant to a search warrant issued by the District of Connecticut, which authorized the seizure of materials relating to "419 Plans." In the IRS Raid, the Government illegally seized hundreds of boxes of materials belonging to entities other than Nova.

The illegal search and seizure forms the basis of the 41(g) Action pending in the District Court in Connecticut. The hundreds of boxes seized by the IRS of Nova's files, as well as the other non-related entities, are still in the possession of the IRS in the IRS's building in Milwaukee, Wisconsin. The Government and the petitioners of the 41(g) Action agreed to negotiate a means of separating the illegally-seized materials from those documents that actually pertain to the criminal investigation.[1] (*See* 41(g) Action, Dkt # 26.) Currently, the boxes containing the seized material are said to be under seal and the documents inaccessible.

Without conceding that the seized documents actually are inaccessible, if this Summons is not quashed, and the Government were given access to the documents implicated by the 41(g) Action, the Government would circumvent an order of the District of Connecticut (Covello, U.S.D.J.), and undermine the public trust in our federal government.

## II.   GENERAL OBJECTIONS AND THE POWELL FACTORS

Petitioner now petitions to quash the August 18th Summons based on the following general objections, many of which are predicated on the Internal Revenue Service's inability to satisfy the so-called "*Powell* factors" or the requisites for a "dual-purpose summons":

A.   <u>Irrelevant Documents Requested</u>:  I.R.C. §§ 7609(a) and (b) provide the identified taxpayer the right to intervene where its records have been summoned from a third-party recordkeeper. Here, the Internal Revenue Service initially served a summons referencing "Nova Benefit Plans, LLC" but addressed to Washington National, requesting documents that are not relevant to Petitioner or any of its affiliates. Given the ongoing multiple investigations of Petitioner and its affiliates, the Internal Revenue Service appears to be churning out summonses without serious regard to what it is requesting or to whom it is directing its requests.

---

[1] Nova specifically reserves all rights concerning the search warrant and grand jury subpoena, including but not limited to the right to challenge the legality of any or all aspects of the criminal investigation and to move to suppress the fruits of the search.

3

B. <u>Absence of Relevance Generally</u>:  An IRS summons is generally enforced only if: (1) there is a legitimate purpose for the examination; (2) the information summoned may be relevant to that purpose; (3) the information is not already in the Internal Revenue Service's possession; and (4) the Internal Revenue Service has complied with the administrative steps required by the Code and the regulations promulgated thereunder.  *See United States v. Powell*, 379 U.S. 48 (1964)  Thus, the relevance of the information sought is determined by the answer to the question whether it "might throw light upon" a proper subject of inquiry.  An even greater showing of relevance is required where the summons is issued to a third party.  Specifically, the question is whether there exists the requisite nexus between the taxpayer and the records of another's affairs to make the investigation reasonable.  Thus, in the current circumstances, the question is whether there is a realistic expectation -- rather than an idle hope -- that something material may be discovered.

C. <u>Vague and Overbroad</u>:  Both the requests for documents and the definitions are vague, ambiguous and overbroad.

D. <u>Harassment</u>:  Although the target of the Summons may not itself object to the Summons on the grounds that compliance would be costly and otherwise burdensome, it is obvious that the Internal Revenue Service is continuing its course of harassing Petitioner and its affiliates by demanding documents from third party record keepers.  If the requests referred to the plans administered by the Petitioner and its affiliates, the cost and burden that would be incurred by Washington National would be significant and would have a direct and severe impact on the Petitioner's relationship with Washington National.  Here, the apparent breadth and burden of the requests is such that the service of these improper demands could interfere with the Petitioner's business relationship with Washington National without any proper

purpose. Similarly, the "investigation" amounts to a form of harassment that could interfere with the Petitioner's business relationships with other clients without any proper purpose.

      E.      <u>Improper Purpose</u>: The documents that have already been produced by various banks and insurance companies (such as JP Morgan Chase Bank, Wachovia Bank and Hartford Life) with respect to Nova have revealed the names and addresses of approximately 60 Participating Employers and Covered Employees of the various plan participating employees. But instead of starting out by "interviewing" these taxpayers – as the Government had claimed it would do in the hearings before the Southern District of New York and the Second Circuit – its initial step was to send out letters advising these Participating Employers and Covered Employees that they were under audit. Thus, after obtaining information regarding the details of the Plan Participants' coverage under the Plan from insurance carriers and other sources, the Government sent "30-day letters" proposing a deficiency.[2] And, when the recipients of such correspondence did not appeal or pay the amount claimed to be due, the Government issued "90-day letters."[3]

By sending out audit notices and notices of deficiency, the Internal Revenue Service effectively confirmed that its real interest all along was in learning the names of the taxpayers to add to its audit grist mill, and not pursuing a legitimate investigation of the named taxpayer. For example, the Summons does <u>not</u> seek documents concerning the Taxpayer's bank accounts or insurance accounts in its or its principal's name, where money might be hidden. Thus, as Petitioner and its affiliates have previously argued in its response to the summonses sent to JP Morgan Chase, Wachovia, New York Life, Hartford Life and National Life of Vermont, the

---

[2] The 30-day letter tells the taxpayer what the IRS believed is owed.

[3] The 90-day letter proposes the assessment of a deficiency in tax and penalty, which assessment is finalized and collected by the IRS if the taxpayer fails to file a Petition with the United States Tax Court within 90 days of the date of mailing of the letter.

Government has failed to proceed in a manner providing individual taxpayers with the statutory protection to which they were entitled pursuant to I.R.C. §7609(f) – the "John Doe" Summons procedure.

Finally, now that it knows it has the names and has conducted some "interviews", the Government can no longer claim in good faith that it can satisfy any of the four *Powell* factors it must meet in order to continue its alleged "investigation" through the enforcement of a summons to obtain information it already has from other sources. Since it has already started to penalize the Taxpayer under I.R.C. §6707A with a $200,000 penalty for participation in a welfare benefit plan, it is the height of bad faith for the Internal Revenue Service to say it is still "investigating" and has not already made up its mind concerning the status of Nova plans as welfare benefit plans or "listed" transactions.

The circumstances of the instant case once again make it painfully apparent that the investigation is not legitimate, that the summons in question is being used pretextually, and that its sole purpose is to obtain information about taxpayers who are not being audited so that they be subjected to summary disallowance of tax benefits associated with Nova, even though the Government will not and cannot comply with the Congressionally-mandated John Doe Procedures.

### III.   ARGUMENT

When a summons is challenged pursuant to 26 U.S.C. § 7609(b), the Government must make out a prima facie showing that: (1) the investigation is pursuant to a legitimate purpose; (2) the information sought is relevant to the legitimate purpose; (3) the IRS does not already have the requested information; and (4) the summons is not procedurally defective. *United States v.*

6

*Powell*, 379 U.S. 48, 57-58 (1964); *United States v. Moon*, 616 F.2d 1043, 1045-46 (8th Cir. 1980).

### A. Under *Powell*, the Summons is Unenforceable Because it was Issued for an Improper Purpose.

Looking at the scope of the documents sought by the Summons and, in particular, how few of them relate to the Taxpayer, one must conclude that the Taxpayer is not the focus of the vast majority of documents sought by overbroad Summons. The Taxpayer is not even named in the majority of the requests. Certainly none of Dr. Reddy's tax returns are currently under audit.

In the few requests where the Taxpayer is mentioned, the scope of the request is astonishing. One such requests, number 3, features 37 subsections. The requests concern the life insurance *products* issued upon the life of Joseph Reddy, rather than focusing on the actual *policies*, and seek *all documents* concerning every aspect of the life insurance products, with particular reference to Nova's president, Wayne Bursey, Nova, and SADI Trust, which is a Nova product.

Even if Agent Wong submits an affidavit stating that her investigation serves a legitimate purpose, "the agent's personal good faith is less relevant than the IRS's 'institutional posture'." *Moon*, 616 F.2d 1046. Here, without a doubt, the IRS's institutional posture is to obtain documents concerning Nova, no matter what. The Government is conducting a fishing expedition and to circumvent its own agreements with counsel, so ordered by the District of Connecticut.

More specifically, by agreement with counsel, so ordered by the Court, the Government is not supposed to review the hundreds of boxes of documents it seized in the April 20, 2010 Raid. Thus, all of the documents the Government wants to support its criminal investigation are outside its reach. By fashioning ridiculously overbroad document requests for the Summons, the

7

Government is trying to access the documents it is not permitted to review, while wrapping itself up in the trappings of a legitimate investigation of the Taxpayer.

Further, it is improper for the IRS to undertake a civil investigation of a taxpayer when a criminal investigation is pending.  *See* 26 U.S.C. § 7602(1); Regs. § 301.7602-1(c) ("The Commissioner may neither issue a summons under this title nor initiate a proceeding to enforce a previously issued summons by way of § 7604 with respect to any person whose tax liability is in issue, if a Justice Department referral is in effect with respect to that person for that liability").  Although Nova is not the Taxpayer on the Summons, it is clearly the target of most of the requests in the Summons.  Nova is currently the subject of a criminal investigation by the IRS.  The Summons, therefore, seeks to do through a third-party that which the Government cannot do directly:  engage in extensive discovery of documents concerning Nova in a forum that is not focused so closely on the civil rights of Nova.  With the Summons, the Government is circumventing binding precedent by seeking Nova documents through its overbroad and illegal Summons.

Another explanation, which is also improper but considerably more disquieting, is the possibility that the Government ignored the Order in the District of Connecticut, reviewed the illegally seized documents, and therefore is trying to create a paper trail to cloak itself the trappings of legitimacy.

All the above scenarios are highly improper and offends the public trust placed in the Government to protect the people, and to do so honorably, rather than by circumventing so-ordered agreements by seeking the same documents through a third party.

### B. Under *Powell*, the Summons is Unenforceable Because the Information Sought is Not Relevant to a Legitimate Purpose.

The categories of documents the Commissioner seeks in response to the Summons are so broad and all-encompassing that they simply do not relate to the Taxpayer and any legitimate search of the Taxpayer. More than half of the requests, in fact, do not even mention the taxpayer. They are:

> 4. All documents reflecting the relationship between Washington National and NOVA Benefit Plans, LLC with respect to any and all life insurance products that were in effect at any time during the period beginning January 1, 2005 through the date this summons was issued.
>
> 5. All agreements between Washington National and NOVA Benefit Plans, LLC regarding the marketing, advertising and/or sales of any or all of the life insurance products that were in effect at any time during the period beginning January 1, 2005 through the date this summons was issued.
>
> 6. All documents reflecting the relationship between Washington National and Sickness Accident Disability Indemnity Plan & Trust with respect to any and all life insurance products that were in effect at any time during the period beginning January 1, 2005 through the date the summons was issued.
>
> 7. All agreements between Washington National and Sickness Accident Disability Indemnity Plan & Trust regarding the marketing, advertising and/or sales of any or all of the life insurance products that were in effect at any time during the period beginning January 1, 2005 through the date this summons was issued.
>
> 8. All documents reflecting the relationship between Washington National and Wayne H. Bursey with respect to any and all life insurance products that were in effect at any time during the period beginning January 1, 2005 through the date this summons was issued.
>
> 9. All agreements between Washington National and Wayne H. Bursey regarding the marketing, advertising and/or sales of any or all of the life insurance products that were in effect at any time during the period beginning January 1, 2005 through the date this summons was issued.
>
> 10. All agreements between Washington National and any and all persons or entities other than NOVA Benefit Plans, LLC, the Sickness Accident Disability Indemnity Plan & Trust, the Trustee of the Sickness

>   Accident Disability Indemnity Plan & Trust regarding the marketing, advertising, and sales of any and all of the life insurance products that were in effect at any time during the period beginning January 1, 2005 through the date this summons was issued.

(*Id.* ¶¶ 5, 6.)

Paragraph 11 asks for documents "reflecting the relationship between Washington National and Joseph Reddy and/or Joseph Reddy's employer with respect to any or all of the life insurance products that were in effect at any time…." Clearly the Commissioner knows that Washington National is the insurance carrier and the Taxpayer is the insured participant in a welfare benefit plan sponsored by Nova. The IRS knows this because they have been given several copies of <u>this information</u> in the past, voluntarily, by Nova in its responses to various Information Document Requests (IDR) made on Nova before an Internal Revenue Service Criminal Investigation Division seized the documents in an illegal raid on April 20, 2010. Now there is no question that the IRS has *all* of Nova's documents concerning the Taxpayer its warehouse in Milwaukee under lock and key.

Paragraph 12 merely asks about Washington National's record retention procedures, which are wholly irrelevant to these proceedings – assuming that a specific tax return was under review. But Washington National, Nova, Wayne Bursey, and the Taxpayer do not have any tax returns under audit. The IRS has broad summons powers under §7602 – but only for the purpose of ascertaining the correctness of a return. If the Commissioner were truly interested in ascertaining the correctness of the Taxpayer's return for a given year, the requests would concern the revenue generated by the Taxpayer and how it was spent. Washington National is not a bank nor does the Taxpayer have an account with Washington National. The annuity policy on his life was owned by and payable to a welfare benefit trust sponsored by Nova.

This leaves only Paragraphs 1, 2, and 3 of the Summons. Paragraph 1 asks only for a copy of the annuity policy that was taken on the life of Dr. Reddy. This Paragraph 1 suffers from the same affliction as Paragraph 11 in that the Service already has multiple copies of the Taxpayer's insurance policy voluntarily given by Nova and at least one copy illegally seized in the Raid. Therefore, the IRS cannot possibly meet its *Powell* requirements in this regard.

As for Paragraphs 2 and 3, all one can say is that they are examples of the classic "overly broad" and "overly burdensome" requests that are routinely struck down and quashed by courts because they are clearly irrelevant to any possible tax issue of the Taxpayers and constitute a prohibited "fishing expedition" that is as inappropriately intrusive as it is vague. The IRS may not conduct an "unfettered" "fishing expedition" through a person's records, but "must identify with the same precision the documents it wishes to inspect." *United States v. Dauphin Deposit Trust Co.*, 385 F.2d 129, 131 (3d Cir. 1967).

It is beyond credulity that such broad requests, the responses to which necessarily implicate every document and every participant or insured for any product that was *also issued* to the Taxpayer, is reasonably related to the Government's investigation of the Taxpayer.

Furthermore, the vague and voluminous materials required of Washington National in Paragraphs 2 and 3 are *word for word* the same as a similar request made of Monumental Life concerning a welfare benefit plan by a summons that was quashed by the district court's and the district court's quashing of the summons was upheld by the Sixth Circuit, which stated:

> The present case exemplifies an exceptional circumstance where automatic reliance upon an agent's affidavit is not adequate because (1) the subpoena is directed to a third party, not to the taxpayer being investigated, (2) the IRS seeks a voluminous amount of highly sensitive propriety information about Monumental's general administration of its products, (3) the IRS has opposed the imposition of a protective order, and (4) the magistrate judge, who spent years considering the scope of the summons, found that the IRS was seeking "some irrelevant information."

*United States v. Monumental Life Ins. Co.*, 440 F.3d 729 (6th Cir. 2006).  The Summons suffers from the *same* defects.

Similarly, the Eighth Circuit in *United States v. Matras*, 487 F.2d 1271 (8th Cir. 1973), upheld the quashing of a summons because the IRS was looking for totally irrelevant information to the audit of any tax return:

> A corporation not required to produce copies of its budgets when the IRS justified its request on the need for a "roadmap" to better understand the corporation's operations.  "The term 'relevant' connotes and encompasses more than 'convenience.'. . . If we were to accede to the government's view, it is difficult to imagine corporate materials that might not contribute to a more comprehensive understanding of the workings of the corporation, and thus, according to the government, be deemed relevant to the tax investigation."

*Id.*, at 1275.

### C. Under *Powell*, the Summons is Unenforceable Because the IRS Already has Documents Responsive to the Summons.

The Government already has the documents relating to Nova and SADI as part of the illegal search and seizure in the IRS Raid and because of Nova's voluntary compliance over the last four years in the case of Dr. Reddy.  Now, even though the Government agreed to stay the 41(g) Action while the parties negotiated a proper means of returning the illegally seized documents, the Government is attempting to seize the Nova and SADI documents from third parties.

### D. The Government Failed to Comply With All Administrative Steps in Issuing The Summons.

The Government has failed to proceed in a manner providing individual taxpayers with the statutory protection to which they were entitled pursuant to I.R.C. §7609(f) – the "John Doe" Summons procedure.  The importance of the Congressionally-mandated protection of the taxpayer through the "John Doe" Summons requirement of §7609(f) was previously expressed by a Judge in the Southern District of Iowa:

> *If the sole purpose of the summons was to find other taxpayers for the IRS gristmill the information sought from AmerUs would not be relevant to [IRS Agent] Higgins' investigation which concerns only the conduct of xélan in marketing the 419 Program and its compliance with various statutory requirements. In such a case, the identity of other participants could be obtained from AmerUs by administrative summons, if at all, only through a "John Doe" summons under the procedure outlined in IRC §7609(f).* The "John Doe" summons process requires, among other things, a court proceeding at which the IRS must establish a reasonable basis for believing that a group or class of unidentified persons may fail, or may have failed, to comply with the internal revenue laws. Because unidentified persons have no opportunity to institute proceedings to quash such a summons, §7609(f) substitutes the Court to "take[] the place of the affected taxpayer" in order to "exert[] a restraining influence on the IRS" through the required findings.

*xélan, Inc. v. United States of America*, No. M-04-83, Order filed Feb. 7, 2005 (S.D. Iowa).

(Emphasis added.)

The Government has continually sought to do an end-run around the John Doe procedures by claiming that the summons at issue is a "dual-purpose" summons. There is no doubt that the Government will make the same argument in this case. But a dual-purpose summons is subject to the strictures of *Tiffany Fine Arts v. United States*, 469 U.S. 310 (1985):

> [I]f the district court finds in the enforcement proceeding that the IRS *does not in fact intend to investigate* the summoned party, or that *some of the records requested are not relevant* to a legitimate investigation of the summoned party, the IRS could not obtain all the information it sought unless it complied with §7609(f).

*Tiffany,* 469 U.S. at 324 (emphasis added).

Under *Tiffany*, a dual-purpose summons will not be enforced if the stated purpose is pretextual and used cynically to avoid complying with John Doe requirements, and unlike Tiffany, there are no audits currently being conducted of either Washington National or the Taxpayer, or even Nova (except, of course, the criminal investigation that automatically nullifies the Summons). Thus, for instance, in *United States v. Gertner*, 65 F.3d 963 (1st Cir. 1995), the IRS served a purportedly dual-purpose summons on a law firm as a pretext where its real aim

13

was to investigate the firm's clients. The district court quashed the summons and the First Circuit affirmed:

> Once the judge determined as a matter of fact that the government's actual purpose in issuing the summonses was to further an investigation of the unnamed client, the follow-on conclusion that the government should have complied with the procedure for issuing John Doe summonses becomes irresistible.

*Gertner*, 65 F.3d at 971.

Moreover, *Tiffany* allows the dual-purpose summons only if the information sought relates in the first instance to a *"legitimate investigation of the summoned taxpayer."* 469 U.S. at 324 (emphasis added). Again, unlike *Tiffany*, neither Nova nor the Taxpayer are under audit.

### E. In the Alternative, the Court Should Stay Compliance with the Government's Summons.

Issues concerning the disposition of the illegally seized documents from the IRS Raid are being adjudicated in the District of Connecticut in the 41(g) Action. Concurrently herewith, Nova filed a Motion for Order to Show Cause why Compliance with the Summons Should Not be Stayed while the criminal investigation is pending. (*See* Bursey Decl. Ex. B.) Thus, if the Court is not inclined to quash the Summons, Nova respectfully requests that the adjudication of this Petition to Quash be stayed until such time the criminal investigation is completed or the entire matter be transferred to the District of Connecticut to conserve precious judicial resources.

## IV. CONCLUSION

For the foregoing reasons, this Court should quash the Summons in its entirety. In the alternative, Nova respectfully requests that adjudication of this petition be stayed until after the criminal investigation of Nova is completed.

Dated this 13th day of September 2010.

          NOVA BENEFIT PLANS, LLC, Petitioner

By:    /s/ Aaron A. Clark
Aaron A. Clark, #20045
McGrath North Mullin & Kratz, PC LLO
Suite 3700 First National Tower
1601 Dodge Street
Omaha, NE 68102
(402) 341-3070
(402) 341-0216 (Fax)
aclark@mcgrathnorth.com

-and-

Joseph M. Pastore III
Fox Rothschild LLP
One Landmark Square, 21st Floor
Stamford, CT 06810
(203) 425-9500
(203) 425-9595 (Fax)
jpastore@foxrothschild.com

ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the above and foregoing **Petition to Quash Summons** was sent to the following person by regular first class, United States Mail, postage prepaid, on the 13th day of September 2010:

Washington National Insurance Company
P.O. Box 81728
Lincoln, NE 68501

Sophia Wong
Internal Revenue Agent
Internal Revenue Service
6340 Variel Ave., FE 1465
Woodland Hills, CA 91367

               /s/ Aaron A. Clark
               Aaron A. Clark